```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    -----------------------------------X
                                        :
4    UNITED STATES OF AMERICA,          :
                                        :  04-CR-01064
5                                       :
                                        :
6              v.                       :  225 Cadman Plaza East
                                        :  Brooklyn, New York
7    JUAN CARLOS RAMIREZ-ABADIA,        :
                                        :  March 1, 2010
8                    Defendant.         :
     -----------------------------------X
9

10        TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
              BEFORE THE HONORABLE STEVEN M. GOLD
11              UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Government:          CAROLYN POKORNY, ESQ.
                                  ANDREA GOLDBARG, ESQ.
14                                JUSTIN LAIRD, ESQ.
                                  United States Attorney's Office
15                                Eastern District of New York
                                  271 Cadman Plaza East
16                                Brooklyn, New York  11201

17   For the Defendant:           PAUL NALVEN, ESQ.
                                  ALEXEI SCHACHT, ESQ.
18                                DAVID S. ZAPP, ESQ.
                                  Nalven & Schacht
19                                350 Fifth Avenue
                                  Suite 1422
20                                New York, New York  10118

21

22   Court Transcriber:           RUTH ANN HAGER
                                  TypeWrite Word Processing Service
23                                211 N. Milton Road
                                  Saratoga Springs, New York  12866
24

25
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

1  (Proceedings began at 4:14 p.m.)

2        COURT CLERK:  Criminal cause for guilty plea,

3  United States of America v. Juan Carlos Ramirez-Abadia, Docket

4  Number 09-CR-772 [sic].

5        Counsel, please state your appearances for the

6  record.

7        MS. POKORNY:  Carolyn Pokorny, Andrea Goldbarg and

8  Justin Laird for the Government.  Good afternoon.

9        THE COURT:  Good afternoon.

10       MR. NALVEN:  For the defendant Ramirez-Abadia Paul

11  Navel, N-A-V-E-L, Nalven & Schacht.  Your Honor, the record

12  should reflect with the Court's permission that my partner

13  Alexei Schacht is at counsel table and also our co-counsel

14  David Zapp.

15       THE COURT:  And we have a Spanish interpreter.

16  Please state your name for the record as well.

17       THE INTERPRETER:  Good afternoon, Your Honor.  Peter

18  Anderson, previously sworn.

19       THE COURT:  Thank you, sir.

20       Mr. Ramirez-Abadia, are you able to understand what

21  I'm saying once it's translated into Spanish for you by Mr.

22  Anderson?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  Okay.  Now, I have had the opportunity

25  to look at some of the documents that have been presented to

me in anticipation of today's proceeding and I do have some

questions.  First of all, as I understand it, the defendant

will be pleading guilty to Count I of two separate

indictments, one of which is from another district.  I don't

have the underlying documents that reflect the consent of the

prosecuting offices in those two districts to proceed here,

but I believe I have a representation from the Government in

the written agreement that that is the case.

MS. POKORNY:  That's right, Your Honor.  The case

was successfully transferred to Judge Townes and so there --

the appropriate documentation has been filed with the clerk of

this court.

THE COURT:  Thank you.  Directing my attention to

the agreement itself, I'll start simply and try to work up.

On paragraph 5 of my copy at least and I think of the original

that has now been handed up to the Court, on page 5, paragraph

3, the top -- very top line there is a date by which the

defendant is to proceed in order to be eligible for a certain

benefit under the guidelines.  That date has passed.  This is

at the top -- very top line on page 5.  I don't know if there

was an intention to amend that date.

MS. POKORNY:  Okay.  So I think we should cross that

out and write in today's date and --

THE COURT:  Okay.

MS. POKORNY:  -- we can initial that.  Thank you for

1  catching it.

2         THE COURT:  Why don't we start with that?

3         MR. NALVEN:  Thank you, Judge.

4         THE COURT:  Sure.  Thank you, everyone.  I have some

5  questions about the penalty provisions articulated on pages 2

6  and 3 of the agreement.  First, with respect to page 2 which

7  delineates the penalty provisions for the 21 U.S. Code §848

8  count in paragraph [©] there's a reference to a minimum term of

9  supervised release which tracks the typical Title 21 narcotics

10  statute provisions, but I'm not seeing that in 848.  I thought

11  that without a specific mandatory minimum supervised release

12  term in the offense statute we would be sent back to Title

13  18's provisions, which do not have mandatory minimum

14  supervised release terms or life supervised release terms.

15  Can you help me with that?

16              [Pause in the proceedings.]

17         THE COURT:  If this were a Title 18 offense --

18         MS. POKORNY:  Yes.

19         THE COURT:  -- it would be a man -- it would be a

20  maximum five-year supervised release term with up to five

21  years of incarceration as a penalty for revocation assuming

22  it's a Class A felony, which I do assume because of the life

23  imprisonment possibility.

24         MS. POKORNY:  Well, I see what you're saying that

25  it's not specifically -- there's no supervised relief

provision seemingly in 848 so let me just check the other
statute I cited to see if that ties it in.  Well, it's an
interesting question that I really hadn't focused my attention
on it, frankly.  I suppose we can advise the defendant that
conceivably he might be entitled to some lesser term of
supervised release and it doesn't harm to warn him that he may
face a greater one and that there's -- but you -- a quick
reading makes me think that you're correct, but I haven't had
sufficient time to look into it.  But at first blush it seems
as though what you're stating is correct.

THE COURT:  All right.  Well, I'll try to articulate
it in a way that's fair to the defendant but if you're not
satisfied, anybody, feel free to object and suggest something
different to me.

Turning my attention to page 3 and the penalties for
Section 1963 I believe that Section 1963(a) states that the
maximum penalty is 20 years absent a predicate act for which
life imprisonment is a penalty but the agreement, unless I'm
missing it, does not specify the predicate act based upon
which the Government contends that a sentence of life
imprisonment is available and I wonder -- and I don't know --
I obviously don't have the benefit of the defendant's
allocution yet.

MS. POKORNY:  Yes.

THE COURT:  I presume we would agree that the

1    defendant would have to allocate to that particular

2    racketeering act in order for the life imprisonment penalty to

3    be triggered and I want to make sure that our proceeding

4    includes such an allocution.

5                MS. POKORNY:  Yes.

6                THE COURT:  Can the Government direct me to the

7    count -- to the racketeering act that it believes carries life

8    imprisonment as a potential penalty?

9                MS. POKORNY:  Yes, Your Honor.  Racketeering Act I.

10               THE COURT:  Um-hum.

11               MS. POKORNY:  Which is paragraphs 10 and 11,

12   conspiracy to distribute and manufacture cocaine.  I should

13   add, it's paragraphs 10, 11, and 12.

14               THE COURT:  Okay.  And --

15               MS. POKORNY:  That's -- that carries a statutory

16   term of imprisonment of ten years to life.  And Racketeering

17   Act III, which is paragraph 15.

18               THE COURT:  Um-hum.

19               MS. POKORNY:  And international cocaine distribution

20   conspiracy that also carries a sentence of ten to life.

21               THE COURT:  And does the defendant intend to

22   allocute to those specific racketeering acts, counsel?

23               MR. NALVEN:  We have prepared an allocution, Judge,

24   that's kind of an all-embracing allocution.  He's -- I mean,

25   if Your Honor wanted to do a count by count he's prepared but

1  we've taken --

2          THE COURT:  Intended to encompass those racketeering

3  acts?

4          MR. NALVEN:  Exactly, Judge.  Specifically.

5          THE COURT:  Okay.  Okay.  Thank you.  I think I only

6  have one more question.

7          MS. POKORNY:  Okay.

8          THE COURT:  And I think I know the answer but I

9  don't know why it's the answer.  Maybe you can help me.

10          When I read Count I the respective indictments it

11  was hard for me to see how a defendant could be charged with

12  both because the enterprises that are described and the

13  predicate acts that are charged seem to overlap and I am

14  wondering what the Government's position is on why these are

15  separate offenses and not two iterations of the same one.

16          MS. POKORNY:  Yes, Your Honor.  At the very least

17  the Eastern District has one or more acts that are distinct.

18  They include Racketeering Act I, which is the murder of a

19  specific individual named Vladimir Viegelman, V-I-E-G-E-L-M-A-

20  N, that is not charged in the other indictment.  And

21  additionally -- I'm going to get the exact numbers accurate --

22  violations 5 through 9 of our continuing criminal enterprise

23  count, Count I, are distinct drug loads that were not charged

24  in the Washington, D.C. RICO indictment.

25          THE COURT:  Thank you.  All right.  I think I'm

1  ready to begin unless counsel have anything else they'd like

2  to raise.  I wonder if the interpreter could just step -- push

3  the microphone a little further away because I'm hearing you

4  through the speaker.

5          THE INTERPRETER:  Yes, Your Honor.

6          THE COURT:  And it's a little distracting to me.

7  Thank you.

8          Mr. Ramirez-Abadia, you are here today because your

9  lawyers have indicated that you wish to surrender your right

10 to trial and enter a plea of guilty pursuant to a written

11 agreement you have made with the prosecution.  Before I may

12 hear any pleas of guilty you wish to offer today I want to be

13 certain that you understand that I am not the Judge who is

14 presiding over your case.  The Judge who's presiding over your

15 case is United States District Judge Townes.  Judge Townes is

16 the one who will decide whether any guilty plea you offer

17 today should be accepted and if so how your sentence should be

18 determined.

19         I am a magistrate judge and I do not have the

20 authority under the law to take those steps.  Judge Townes,

21 who is a District Judge, will be taking those steps.  If you

22 wish, you have the absolute right to present your plea of

23 guilty to Judge Townes and if that is your choice there will

24 no prejudice to you.  You will be permitted to enter pleas of

25 guilty on the same terms and conditions that are being offered

1  to you today on a different day convenient to Judge Townes.

2          In the alternative, though, if I have your consent

3  and agreement I do have the authority to be the Judge who

4  hears your plea of guilty.  If you decide to proceed before

5  me, I will arrange for this entire proceeding to be recorded.

6  That way Judge Townes will have a full record of everything

7  we've said to each other before she is called upon to decide

8  whether to accept your plea or how to determine your sentence.

9  Do you understand me?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you wish to give up your right to

12  have Judge Townes be the Judge who hears your plea and do you

13  agree to present it instead to me?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Are you making this decision voluntarily

16  and of your own free will?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Have you been threatened or promised

19  anything to encourage you to make this agreement?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Can you see this form from where you

22  sit?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Did you review this form in Spanish with

25  your lawyer?  Did you understand it and did you sign it?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Counsel, are you aware of any reason why

3  your client should not consent to proceed before me for these

4  purposes?

5          MR. NALVEN:  None, Your Honor.

6          THE COURT:  I find the defendant's consent knowing

7  and voluntary and I've added my endorsement to the consent

8  form reflecting that finding.

9          Mr. Ramirez-Abadia, before I may recommend to Judge

10 Townes that Her Honor accept any plea of guilty you decide to

11 offer today, I need to ask you a long list of questions.  The

12 questions are very important.  They are designed to make sure

13 that you understand what a serious decision it is you are

14 about to make and what the consequences of that decision are.

15 The questions are also designed to protect the prosecution and

16 the Court by creating a record that will demonstrate that I

17 explained to you what your rights were, that will demonstrate

18 that you said you understood your rights and wanted to waive

19 them or give them up.  Once that happens if you go forward

20 with a guilty plea it will be legally valid and permanently

21 binding upon you.

22         Accordingly, I urge you to listen carefully to the

23 questions.  If you're not sure you understand my question tell

24 me and I will try to say it again in different words and make

25 it clearer.  If you want to ask me a question or have a

1  private conversation with your lawyer just tell me and I'll

2  give you the opportunity.  Is that clear?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  It's very important that you tell me the

5  truth today and I will direct that you be placed under oath

6  before we proceed.  Please rise with your attorney.

7         THE CLERK:  Please raise your right hand.

8      (Juan Carlos Ramirez-Abadia, Defendant, Sworn.)

9         THE COURT:  You may be seated now.  Now that you are

10 under oath when you answer my questions you do so subject to

11 penalties of perjury or making a false statement.  That means

12 that if you lie to me this afternoon new charges could be

13 brought against you just for that.  Is that clear?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Tell me your full name.

16        THE DEFENDANT:  Juan Carlos Ramirez-Abadia.

17        THE COURT:  Thank you.  How old are you?

18        MS. POKORNY:  Forty-seven.

19        THE COURT:  How much formal schooling have you had?

20        THE DEFENDANT:  High school.

21        THE COURT:  Are you having any difficulty

22 understanding the interpreter's translation of my words?

23        THE DEFENDANT:  No, sir.

24        THE COURT:  Are you now or have you recently been

25 seeing a doctor, psychiatrist or other health care

1  professional for any physical or mental or emotional problems?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  In the last 24 hours have you taken any

4  narcotics, drugs, medicine, pills or alcohol?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Have you ever received medical treatment

7  or been hospitalized for drug or alcohol abuse or psychiatric

8  problems?

9          THE DEFENDANT:  Never.

10         THE COURT:  Is your mind clear today?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you understand everything that's gone

13 on here so far?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Counsel, if I've already asked you this

16 forgive the repetition.  Are you appointed or retained?

17         MR. NALVEN:  Retained, Your Honor.

18         THE COURT:  Have you discussed the matter of

19 pleading guilty carefully with your client?

20         MR. NALVEN:  Yes.

21         THE COURT:  Does he in your judgment understand the

22 rights he'll be surrendering if he enters a guilty plea?

23         MR. NALVEN:  Yes, Your Honor.  Absolutely.

24         THE COURT:  Is he capable of understanding the

25 nature of this proceeding?

1          MR. NALVEN:  Yes, Judge.

2          THE COURT:  Do you have any doubt about his

3   competence to plead at this time?

4          MR. NALVEN:  None whatsoever.

5          THE COURT:  Have you alerted him to the maximum and

6   minimum sentence and fine that could be imposed, discussed

7   with him the likely operation of the sentencing guidelines as

8   contemplated by his agreement and alerted him to the

9   collateral consequences of a conviction?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Thank you.

12         Mr. Ramirez-Abadia, have you had enough time to go

13  over your case and the documents in your case very carefully

14  and have you, in fact, done so?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Are you satisfied to have the lawyers

17  who are representing you here today be the attorneys who are

18  defending you in this case?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  If you could no longer afford their

21  services and you demonstrated that fact to me I would appoint

22  a lawyer at no cost to you to defend you in connection with

23  further proceedings in this case.  You should not plead guilty

24  because you believe you cannot afford the fees necessary to

25  defend the case.  Do you understand me?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you wish to proceed with your current

3   attorneys?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  You are before the Court in connection

6   with two separate indictments:  One filed in the United States

7   District Court for the District of Columbia under Docket

8   Number 04-CR-126 and one before this court, the United States

9   District Court for the Eastern District of New York under

10  Docket Number 04-CR-1064 and in that case it is the third

11  superseding indictment.  Have you received copies of these two

12  indictments?  Have they been explained to you carefully by

13  your lawyers in Spanish and do you understand what you are

14  accused of in these charging documents?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  In the Washington D.C. indictment you

17  are charged in Count I with knowingly and unlawfully

18  participating in the activities of an enterprise the

19  prosecutors call the Norte Valle Cartel which participation

20  included committing a series of racketeering acts that

21  constituted a pattern of racketeering activity including

22  agreeing with others to manufacture and distribute cocaine

23  outside the United States to be brought into the United States

24  and to launder the money generated by that activity.  Do you

25  understand what you are accused of in the Washington, D.C.,

1  indictment?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  In the Eastern District indictment you

4  are charged with a different crime but one that also involves

5  your alleged role in what the prosecutors call the Norte Valle

6  Cartel.  In this indictment you are charged with being a

7  leader of that organization and committing a series of crimes

8  in connection with its activities including the murder on or

9  about December 2, 1993 of Vladimir Viegelman and the agreement

10  with other members of the cartel to import cocaine into the

11  United States from a foreign country.  Do you understand the

12  charge against you the Eastern District indictment?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  You have a right to plead not guilty to

15  these charges and all of the other charges pending against you

16  and it doesn't matter whether you committed these crimes or

17  not with respect to that right.  Every defendant, one who is

18  guilty or one who is not guilty, has the right to plead not

19  guilty and require the prosecution to prove its case at trial.

20  Do you understand?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  If you were to plead not guilty or

23  persist in any previously entered not guilty pleas you've made

24  then under the Constitution and laws of the United States you

25  would be entitled to a speedy and a public trial by jury with

1 the assistance of your attorneys on all of the charges that

2 are pending against you.  Is that clear to you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  At your trial you would be presumed to

5 be innocent.  The prosecution would be required to overcome

6 this presumption of innocence and prove that you were guilty

7 by competent evidence and beyond a reasonable doubt.  You

8 wouldn't have to prove that you were innocent and if the

9 prosecution failed to prove that you were guilty beyond a

10 reasonable doubt, the members of the jury would have the duty

11 to return a not guilty verdict and Judge Townes would instruct

12 them accordingly.  Is that clear?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  That's why juries sometimes find a

15 defendant not guilty even though the members of the jury

16 believed the defendant probably committed the crimes he's been

17 charged with.  "Probably" is not enough for a conviction.

18 Jurors are instructed that they must find a defendant not

19 guilty unless they are convinced beyond a reasonable doubt

20 that he committed the crimes with which he has been charged.

21 Do you understand?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  If you proceeded to trial then during

24 the course of your trial the prosecution's witnesses against

25 you would be required to come into the courtroom and present

their testimony against you right in front of you and your
attorneys.  Your attorneys would have the right to question
the prosecution witnesses on cross-examination.  Your
attorneys would have the right to raise questions to the
evidence that the prosecution attempted to offer against you
and working closely with you your attorneys would have the
right to call witnesses, present evidence, and make arguments
to the jury before they considered their verdict during the
course of your trial.  Is that clear to you?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  At your trial you yourself would have
the right to testify as a witness in your own defense if that
was the choice that you made; on the other hand, no one could
require you to testify at your trial over your objection.
That is because the United States Constitution says that no
one may be required to say anything that is self-
incriminating.  If you decided that you did not want to
testify in your own defense at your trial, no one could make
you and Judge Townes would instruct the members of the jury
that they could not take your silence into account or hold it
against you when they decided what their verdict should be.
Do you understand that?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  On the other hand, if you offer the
guilty pleas contemplated by your plea agreement and Judge

Townes decides that they should be accepted, you will as a result be surrendering your constitutional right to a trial and all of the other rights that I have just described to you. There will be no further trial of any kind in your case. You will have no right to appeal from the judgment of guilt that will be entered against you; rather, Judge Townes will essentially convict you of these crimes based upon your admissions in my courtroom this afternoon and that will free the prosecution of any responsibility to prove that you committed these crimes. Is that clear?

THE DEFENDANT: Yes, sir.

THE COURT: If you proceeded to a trial and the jury found you guilty of these crimes by their verdict you would be entitled to take an appeal to a higher court and ask that higher court to review the legality of all of the proceedings leading up to the jury's verdict of guilt. But when you plead guilty your conviction is based upon your own words that you chose to speak and in that circumstance there is no right to appeal from the conviction that results. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, I will have to ask you questions about what you did in connection with the offenses with which you were charged. Those questions are designed to satisfy me and Judge Townes that your pleas of

1 guilty are based upon facts that really happened. You do not

2 have to answer these questions unless you wish to finalize and

3 go forward with your guilty plea. If you do answer these

4 questions and you admit that you committed the crimes you are

5 charged with your answers will be a surrender of your right

6 not to say anything that is self-incriminating. Do you

7 understand that?

8           THE DEFENDANT: Yes, sir.

9           THE COURT: Do you still wish to give up your right

10 to trial and all of the other rights that I have been

11 describing to you today?

12           THE DEFENDANT: Yes, sir.

13           THE COURT: I am told that you are making this

14 decision pursuant to the terms of a written agreement you have

15 made with the prosecution. The agreement has been marked as

16 Court's Exhibit 1. It is 19 pages long. It is typewritten.

17 There is a handwritten amendment in the first line on page 5

18 and a second handwritten amendment at the begin -- in the

19 middle of paragraph 20 on page 18. I'm going to ask you to

20 look at Court's Exhibit 1 now.

21           MR. NALVEN: Thank you so much.

22           THE COURT: Do you recognize this document and does

23 your signature appear upon the final page of it?

24           THE DEFENDANT: Yes, sir.

25           THE COURT: Before you signed this document was it

1  read to you verbatim in Spanish?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Did you carefully review it with your

4  attorneys?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did you understand the document that you

7  signed?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you have any questions about your

10  agreement that you would like to ask me or discuss privately

11  with your lawyers before we proceed?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Is everything that is written down in

14  your agreement clear to you?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Does your agreement contain in writing a

17  full accurate statement of everything you and the prosecution

18  have agreed to with respect to your case?  That question

19  didn't translate well; I can see by the look on your face.

20  Referring you back to this agreement is everything that you

21  and the prosecutors agreed to written down in here and is it

22  written down accurately and fairly?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Has anyone promised you anything in

25  return for your guilty pleas other than what is written down

1 in your agreement?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  As I've said before, your agreement

4 contemplates pleas of guilty to two separate charges, one from

5 the Eastern District of New York and one from the Federal

6 Court in Washington, D.C.  I need to review with you now the

7 penalties you face in connection with these charges.

8          MR. NALVEN:  Your Honor, could we have just one

9 second before we pass on to the next --

10          THE COURT:  Yes, sir.

11          MR. NALVEN:  Okay.

12          [Audio gap.]

13          MR. NALVEN:  Basically, Your Honor, I didn't want

14 the record to go by without correcting.  When Your Honor had

15 taken my client through the pedigree portion, when he said

16 "superior" or "superior" in English what he meant was I -- is

17 that he has substantial higher education, not high school as

18 the interpreter indicated.

19          THE COURT:  Thank you.

20          Mr. Ramirez-Abadia, did you hear and understand your

21 attorney's correction?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And is it, in fact, the case that you

24 have some college education as well as a high school diploma?

25          THE DEFENDANT:  Yes, sir.

1    THE COURT:  Thank you.  Thanks.  I'd like to now

2  review the penalties that face you in connection with these

3  charges.  Can I refocus your -- can you refocus your attention

4  to that?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  I'm going to start with the Eastern

7  District of New York charge where you're accused under the

8  narcotics laws of being a leader of a continuing criminal

9  enterprise and committing a murder and the manufacture and

10  importation of cocaine, among other things, in connection with

11  that role.  The statute you are accused of breaking, the law

12  you are accused of breaking requires a prison sentence of at

13  least 20 years and authorizes a prison term as long as the

14  rest of your life.  Do you understand me?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  In addition, the statute calls for a

17  term of supervised release.  Supervised release is a period of

18  time that doesn't even start running until you finish serving

19  whatever prison sentence is imposed, if you ever do.  If you

20  are ever released from prison, you will then be subject to the

21  rules of supervised release.  Although you will almost

22  certainly be deported from the United States if you are ever

23  released from prison I will still tell you that if you somehow

24  remain here you will be subject to a long list of rules that

25  will include restrictions on your right to travel and

1 requirements that you regularly report to a probation officer

2 and follow the officer's instructions and answer the officer's

3 questions with honesty.  Whether you remain in the United

4 States or not, it will be a further condition of your

5 supervised release that you commit no new crimes at all.  And

6 if you break any supervised release rule that you are required

7 to follow, you will be subject to an arrest and being brought

8 before this court and being sent back to prison on this

9 continuing criminal enterprise charge.  Is all of that clear

10 to you?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  As I read the statute this term of

13 supervised release could be as long as five years and could

14 result in a period of incarceration of up to five years if you

15 break any of the rules.  Is that clear?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  The prosecution argues that as a

18 narcotics offense the supervised release term must be at least

19 five years and could be as long as the rest of your life but

20 agrees with my reading that a violation of supervised release

21 could result in up to five years of incarceration.

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  You could be fined as much as two

24 million dollars.  You understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And the Government seeks a criminal

2   forfeiture in the amount of ten billion dollars, with a B if

3   I'm correct, including but not limited to a variety of assets

4   described in your agreement.  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Finally, as is the case -- oh, excuse

7   me.  Not finally.  You could be required to make restitution

8   based upon the amount that your enterprise gained by

9   committing the crimes with which you have been charged.  Is

10  that clear?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  A $100.00 special assessment will be

13  imposed against you.  Is that clear?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And finally, your plea of guilty will be

16  grounds to deport or remove you from the United States of

17  America and whatever you admit to in my courtroom today may be

18  used against you in any future proceedings that might be held

19  to determine your right to remain in or ever return to the

20  United States.  Is that clear?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  I want to turn your attention then to

23  the indictment from Washington, D.C., in which you are charged

24  with participating in the affairs of a racketeering enterprise

25  through a pattern of criminal activity.  Do you have your

1    attention on that case now?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  The penalties you face in that case are

4    similar but not identical to the ones I've just described, so

5    please focus carefully so you don't confuse them.  Moreover,

6    they could be imposed consecutively or concurrently in Judge

7    oTownes' discretion.  That means that it will be up to Judge

8    Townes whether you will have to finish serving all of the

9    sentence conditions imposed in Count I in the Eastern District

10   case before you can begin to work on satisfying the sentence

11   in the D.C. case or whether you will get credit for both for

12   the same effort or time incarcerated.  Do you understand me or

13   did I confuse you?

14           THE DEFENDANT:  Will you repeat that, Your Honor?

15           THE COURT:  Yeah.  I'm going to try that again.  I

16   didn't say it as well as I wanted to.

17           The penalties in connection with the Washington,

18   D.C. case could be imposed consecutively or in addition to the

19   penalties imposed on the Eastern District case or concurrently

20   meaning that each day you spend incarcerated could be

21   attributed to both sentences.  It will be up to Judge Townes

22   to make that decision.  But in terms of pleading guilty I try

23   to make sure that a defendant understands the worst possible

24   outcome and that would be consecutive sentences, in other

25   words, having to finish the sentence in the Eastern District

1  case before you could begin to get credit towards the

2  Washington, D.C. case.

3          MR. NALVEN:  Your Honor, not to muddy the record at

4  all, I closely counseled my client on the penalty aspect of

5  the case of both indictments and I think in a moment he's

6  prepared to acknowledged exactly what Your Honor placed on the

7  record.  But I know his psychology as well and I would ask if

8  Your Honor in some way would acknowledge footnote one on page

9  2, which has the extradition treatment of the possible

10  penalties.

11          THE COURT:  Yes.  Okay.  I overlooked that.  I

12  appreciate your bringing it out to me.

13          My understanding from the prosecution is that there

14  is an agreement in this case that the defendant's sentence

15  will not exceed 30 years of 360 months.  Is that correct,

16  Ms. Pokorny?

17          MS. POKORNY:  Yes, Your Honor.  And that's because

18  as a condition of extraditing the defendant from Brazil the

19  U.S. Government had to assure the government of Brazil that he

20  would not serve in excess of 30 years in prison.

21          MR. NALVEN:  Haven't done -- he's done the -- he

22  hasn't done the --

23          MS. POKORNY:  Altogether.

24          MR. NALVEN:  -- [inaudible].  He said he was going

25  to refer to one later on.

1      THE COURT:  You know, the microphone is picking you

2  up.  I can hear you right here.

3      MR. NALVEN:  I'm sorry.

4      THE COURT:  I thought I'd point you to -- I don't

5  mind the disturbance.  I don't want you to inadvertently say

6  something in a sidebar with your colleague that then gets

7  picked up by our court reporter, so if you -- if at any point

8  you need to say something privately, just turn the green light

9  off and it won't be overheard.

10      MR. NALVEN:  Yes, Your Honor.

11      MR. ZAPP:  I just want to make it clear to the Court

12  as well as to the Judge.

13      THE COURT:  I'm "the Judge and the Court."  You

14  said, "I want to make it clear to the Court and the Judge."

15  Could you define the difference for me, Mr. Zapp?

16      MR. ZAPP:  I'll try.  You know, there's an

17  understanding with respect to the plea agreement that the

18  defendant will get 25 years by the Judge or he has the right

19  to withdraw his plea of guilty so that this becomes somewhat

20  difficult for him to explain to him.  In fact, I'm not sure if

21  the Court is simply saying this is what the law provides and

22  that is separate and apart from what the plea agreement

23  provides, so I just wanted the Court to be aware.

24      THE COURT:  I'm glad you pointed it out.  I was not

25  aware.  I need to take a closer look at that paragraph.

1     MR. NALVEN:  My understanding -- my understanding at

2  the bench conference was that Your Honor was going to address

3  that later on when we talked about promises and conditions,

4  Your Honor.  I have no doubt Your Honor is going to get to

5  that.  Just in terms of the penal -- overall penalty phase,

6  the aggregate sentence, we thought it was important to point

7  out the extradition treatment.

8     THE COURT:  I see.  Yes.  I hadn't focused on it as

9  carefully as I should and I appreciate your bringing it up

10  now.

11     Going back to the 30-year provision I understand the

12  escape clause, to use an informal term, for a sentence

13  exceeding 25 years.  Has -- what's to prevent Judge Townes

14  from imposing more than 30 years, if anything?

15     MS. POKORNY:  The U.S. Government has assured the

16  government of Brazil that we will take all steps necessary to

17  ensure that he does not serve in excess of 30 years, which

18  would include things such as reducing the charges if

19  necessary.  We had to do whatever is necessary to make sure

20  that we keep that promise.  And so prior to sentencing we

21  would ask Judge Townes to commit that she's willing to help us

22  achieve that goal and if she were to signal that she objected

23  then we would have to take steps necessary.

24     THE COURT:  I understand.

25     MS. POKORNY:  And I would prefer if we stick with

1 the agreement because perhaps we might state things that stray

2 a little bit from the agreement, so I would suggest if we're

3 going to discuss paragraph 14 to simply state that if those

4 conditions are satisfied then and only then could the

5 defendant receive a sentence of 25 years.

6     THE COURT:  Okay.

7     MS. POKORNY:  And that would be --

8     MR. NALVEN:  Your Honor, I don't want to muddy the

9 waters either and I sincerely don't think I am, but I'm

10 listening to a conversation in here where the Court is saying

11 that what is to prevent Judge Townes from giving this

12 defendant 30 years and do you understand that and the fact is

13 that there is such a provision that would allow the defendant

14 to withdraw his plea of guilty if he didn't get 25 years.  So

15 there seems to be some tension there and --

16     THE COURT:  But it's not automatic.  It's subject to

17 the conditions of paragraph 14.

18     MR. NALVEN:  That's correct.

19     THE COURT:  Okay.

20     MR. NALVEN:  That's correct.

21     THE COURT:  I understand and I appreciate the time

22 we've taken to clarify all of this but I feel we need to go

23 back and explain what we've already done and where we're

24 headed.

25     Mr. Ramirez-Abadia, what I have been trying to

1  explain to you are what the maximum penalties are that the law

2  provides.  Because of the manner in which you were brought

3  before this court and because of paragraph 14 of your

4  agreement there are other factors that affect your maximum

5  exposure in the case and certain rights you may have to

6  challenge your sentence or withdraw your guilty plea, but I

7  want to start by making sure you understand the maximum

8  sentences available under the statute and then we will talk

9  about how those maximum sentences may or may not be available

10  to Judge Townes when she decides your sentence.  I know it's

11  complicated to do it that way but it's our pattern and if you

12  can stay with me that's the way I would like to proceed.  Do

13  you understand me so far?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  So although on the one hand the

16  prosecutor has now committed on the record of this proceeding

17  as she has in writing in your agreement, referring to footnote

18  1 on page 2, that the prosecution understands it has made a

19  commitment to the government of Brazil that you will not serve

20  more than 30 years in prison.  The statute -- the law on the

21  books in the United States says with respect to the Eastern

22  District count that your sentence must be at least 20 years

23  and could be as long as the rest of your life, that you will

24  be subject to a term of supervised release and if you break

25  the supervised release rules you could be sent back to prison

for up to five years, and has the financial penalties in terms

of fine, forfeiture, restitution and special assessment, and

the collateral consequence in terms of deportation that I have

already explained to you.  Do you understand all of that?

THE DEFENDANT:  Yes, sir.

THE COURT:  With respect to the charge against you

from Washington, D.C., again, a second term of life -- I know

that's a foreign concept to a layperson but as lawyers and

judges we understand that one can be brought before the Court

on two separate charges, each of which carry a possible

sentence of up to life in prison and those sentences could as

a theoretical matter be imposed consecutively.

However, I acknowledge as your lawyers I think would

have me acknowledge at this point that the Government is

committed that your maximum exposure for both counts will

remain at the 30-year level and that they will do whatever

they can -- everything they can to make sure that Judge Townes

does not impose sentences on both counts that exceed that term

of incarceration.  Is that correct, Ms. Pokorny?

MS. POKORNY:  Yes, sir.

THE COURT:  With respect to the Washington, D.C.,

count supervised release applies there as well.  Here because

supervised release does not require incarceration consecutive

terms are possible.  A second term of supervised release of up

to five years could be imposed on the Washington, D.C., count

1  with a penalty of up to five years of incarceration should

2  supervised release rules be broken.  Is that clear to you?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Just to make the waters a little

5  muddier, what would the Government's position be if we were to

6  say a sentence of 30 years was imposed, withdrawal of the

7  guilty plea were made, and supervised release were violated?

8  Would the defendant be subject to additional incarceration

9  under the circumstance?

10            MS. POKORNY:  I think he could be because that would

11  be a separate offense.  He cannot serve more than 30 years on

12  this offense, but that does not speak to him committing some

13  future violation of supervised release or some future crime.

14            THE COURT:  Did you hear and understand what the

15  prosecutor's position in that regard would be?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  On the second charge from Washington,

18  D.C., you could subject to a fine that would be either

19  $250,000.00.  Is there any pecuniary loss theory in this case?

20            MS. POKORNY:  For the RICO?

21            THE COURT:  Yeah.  I'm looking at the bottom of page

22  3.

23            MS. POKORNY:  No.

24            THE COURT:  Or twice the amount that was gained by

25  your racketeering activities, whichever is greater.  Do you

1 understand that?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  A criminal forfeiture judgment could be

4 entered or would be entered in this case involving the same

5 ten billion dollars and other assets set forth in the

6 agreement?  Do you understand that?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  Restitution could be ordered under this

9 charge as well.  That would not be imposed consecutively if

10 you make restitution.  You only have to make that once.  Do

11 you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Of course, to the extent that different

14 conduct is charged in each count and the different conduct

15 caused a restitution obligation to arise, the restitution

16 might not overlap completely.  Is that clear?

17         THE INTERPRETER:  Your Honor, may the interpreter

18 have a repetition of that phrase?

19         THE COURT:  I'll try.

20         THE INTERPRETER:  Thank you.

21         THE COURT:  To the extent that there are different

22 action -- criminal actions in the Washington, D.C., count than

23 in the Brooklyn, New York count different restitution

24 obligations might arise and you could therefore be subject to

25 different restitution obligations in each count.  Do you

1  understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  A second $100.00 special assessment will

4  be imposed on this charge.  Is that clear?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And your plea of guilty to this charge

7  will provide a separate and independent ground for your

8  deportation or removal from the United States.  Do you

9  understand that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Excellent.  I want to turn your

12 attention then to what we call the Sentencing Commission

13 guidelines.  These guidelines will be calculated by Judge

14 Townes and will provide Her Honor with a range of months

15 within which the law suggests your sentence should be set.  I

16 take it that the Government's position is that the guideline

17 range would exceed 30 years in this case.

18         MS. POKORNY:  Yes, sir.

19         THE COURT:  The final decision about the guidelines

20 will be made by Judge Townes.  Judge Townes has not calculated

21 the guidelines yet and Her Honor won't do so until she

22 receives something called a presentence report.  That report

23 hasn't been written yet.  Once it is ready you and your

24 lawyers and the prosecutors will all be permitted to read it.

25 You will then have an opportunity to appear before Judge

Townes at which time you may instruct her or direct her

attention towards anything in the report with which you

disagree.  Only then will Judge Townes calculate the guideline

range.

The prosecution predicts that Judge Townes will

decide upon a guideline range exceeding 360 months but that

they will persuade Judge Townes, it is their hope and

expectation, to be bound by their commitment, that you will

not be incarcerated for longer than that making any guidelines

calculations in excess of 30 years moot.  Do you understand

that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Paragraph 14 of your plea agreement

indicates that if its terms are met the Government will seek

Judge Townes' imposition of a sentence of 25 years and that if

Judge Townes declines to agree to that application by the

Government that you will be permitted to withdraw your guilty

plea if all of the other terms of paragraph 14 are met and

only if all of the other terms of paragraph 14 are met.  Did I

state that correctly from the Government's perspective?

MS. POKORNY:  I would add that both sides will be

recommending the specific sentence of 25 years if the

conditions of paragraph 14 are met.

THE COURT:  Is that correct from defense counsel's

point of view?

1        MR. NALVEN:  That's our understanding as well,

2   Judge.  Thank you.

3        THE COURT:  Mr. Ramirez-Abadia, did you hear and

4   understand everything we've just said about paragraph 14 and

5   25 years and how it's not automatic?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  Very well.  No matter what sentence you

8   receive if the conditions of paragraph 14 are not met you will

9   have no right to withdraw your plea of guilty.  The only right

10  you would have would be to appeal from the length of your

11  sentence if you have grounds to contend that it was unlawfully

12  imposed.  Do you understand that?  Well --

13        [Off the record.]

14        THE COURT:  Okay.  We're back on the record.

15  Mr. Ramirez-Abadia, I know you've consulted with your lawyer.

16  Do you remember what I said to you and do you understand it?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Very well.  Now, you may have heard of

19  parole.  Parole is a program of early release from a prison

20  sentence but parole is a New York State program.  There is no

21  parole in Federal Court or federal prison, so you will not be

22  released early from whatever sentence Judge Townes imposes on

23  parole.  Do you understand me?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Assuming you meet the conditions of

1   paragraph 14 and you receive a sentence of the full 25 years,

2   you will have no right to withdraw your guilty plea because

3   you decide at some future date it was a bad idea or you don't

4   want to do it anymore.  You're committed as you go forward

5   today.  Do you understand?

6               THE DEFENDANT:  Yes, sir.

7               THE COURT:  Do you have any questions you would like

8   to ask me or discuss privately with your attorneys about the

9   charges against you, the rights you're being asked to

10  surrender, the penalties you face, the terms of your agreement

11  or anything else?

12              THE DEFENDANT:  No, sir.

13              THE COURT:  Is everything that's been said during

14  this proceeding by me, by the prosecutors, and by your lawyers

15  clear to you?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  Are you ready to enter your pleas?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Counsel, do you know of any reason why

20  your client should not proceed with the guilty pleas

21  contemplated by this agreement?

22              MR. NALVEN:  No, Your -- no, Your Honor.  None

23  whatsoever.

24              THE COURT:  Mr. Ramirez-Abadia, with respect to

25  Count I of Eastern District indictment 04-CR-01064-S-3 in

1  which you are charged with leading a continuing criminal

2  enterprise how do you plead, guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  With respect to Count I of the

5  indictment from Washington, D.C., Number 04-CR-126 in which

6  you are charged with participating in the affairs of a

7  racketeering enterprise through a pattern of racketeering

8  activity how do you plead, guilty or not guilty?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Do you make these pleas of guilty

11  voluntarily and of your own free will?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Have you been threatened or forced by

14  anyone to plead guilty to these charges?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Have you been promised anything other

17  than what is written in your agreement with the Government as

18  further described or in this proceeding in my courtroom this

19  afternoon in return for these pleas of guilty?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  I understand we are at the point in the

22  proceeding where I will call upon you to explain to me what

23  you did that makes you guilty of these offenses.  I understand

24  that with the help of your attorneys you have prepared a

25  written statement you would like to read and file with the

1  Court.  I have no objection to that procedure provided we

2  understand the following.  Your lawyers may have helped you

3  find the words but the facts that they communicate are your

4  responsibility.  What I mean by that is you will recall that I

5  placed you under oath at the beginning of this proceeding.

6  You are about to tell me certain things that you have

7  knowledge of, I believe, that no one else in the room has

8  knowledge of.  You are representing these facts under oath to

9  the Court.  Your lawyers may have helped you with the style

10  and completeness of your presentation, but this must be the

11  truth as you recall it or you are subject to the penalties of

12  perjury.  Is that clear to you?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  You may tell me then either in your own

15  words as you recall them or by reading the statement your

16  lawyers have helped you prepare what you did that makes you

17  guilty of these offenses.

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  How are we going to do this?

20        MR. NALVEN:  We have an agreement if it's okay with

21  the Court paragraph by paragraph.

22        THE COURT:  That's fine.

23        THE DEFENDANT:  Beginning in the late 1980s up until

24  the end of the period covered by the two indictments against

25  me and up to my arrest in the summer of 2007 I engaged in

1 numerous narcotics and narcotics trafficking with other crimes

2 as detailed in the indictment -- the two indictments against

3 me.  I admit that I am guilty of all crimes charged in those

4 two indictments.

5      THE COURT:  Now, I assume that although you two are

6 reading that you are subscribing to the translation in the

7 written document -- or maybe you even authored it.  I don't

8 know.  Can you help me out with that?

9      THE INTERPRETER:  Yes, Your Honor.  I reviewed the

10 document, the translation into English of this document.  I

11 believe it to be a professionally done translation and is

12 accurate in its entirety.

13      THE COURT:  Thank you very much.

14      THE INTERPRETER:  So I am simply reading what

15 Mr. Ramirez-Abadia is reading into the record.

16      THE COURT:  Thank you very much.

17      MR. NALVEN:  And, Your Honor, I can state as an

18 officer of the Court that Mr. Ramirez-Abadia took a personal

19 pen [ph.] in preparation of both documents.  He was very

20 closely counseled and participated in every line.

21      THE COURT:  Thank you.

22      THE DEFENDANT:  During the course of my narcotics

23 trafficking I became one of the leaders of the CCE Enrico

24 [Ph.] organizations known as the North Valley Cartel.  As such

25 I was responsible for the importation into the United States

of more than 150 kilos of cocaine.  In addition, much of the
cartel's financial proceeds were laundered by the enterprise
of which I was a leader.  I personally made more than ten
million in profit from this enterprise.  In order to further
the aims of the enterprise, a narcotics conspiracy, I and
others ordered the kidnapping and murder of various people
including the murder of Vladimir Viegelman.  I also bribed
many law enforcement and Government officials in order to help
myself and the enterprise to gain valuable information and to
avoid detection and prosecution by law enforcement.

Regarding the charges for my criminal activities
which were accomplished in Columbia and other countries during
the 1980s until my extradition to the United States in August
of 2008 I conspired with others and organized a criminal
enterprise of which I was the leader.  It was composed of
various fronts, one dedicated to drug trafficking in Columbia
and Mexico as well as the United States and in other Latin
American countries.  And as part of said activity I sponsored
the creation of cocaine laboratories that we own and
laboratories that we shared with others or contracted.

For the transportation of cocaine produced in the
above-mentioned laboratories I used maritime transportation
methods such as fishing vessels, merchant vessels, speed
boats -- speed boats and submarines.  I also exported cocaine
using aviation transport methods in all its forms using both

1   public airports and clandestine air strips.  We also utilized

2   a front dedicated to money laundering which received currency

3   in the United States, Mexico, Brazil and other countries in

4   Latin America in transporting it to Columbia where it was

5   entered into the financial system through cash and the use of

6   sham companies.  And I also had hid assets that were the

7   fruits of drug trafficking in the name of nominees [ph.] or

8   straw owners.  We maintained other fronts dedicated to

9   committing acts of official corruption in Columbia with the

10  aim of the enterprise avoiding prosecution.

11          We also had a front that functioned as offices of

12  collection and assassination dedicated to acts of violence

13  among which were committed kidnappings and murders ordered by

14  me as leader of the enterprise and by my lieutenants and our

15  subordinates.  I declare myself guilty of all this conduct

16  that I led and supervised that comprised a criminal

17  organization as an alias Chupeta.  All of the allegations in

18  the Eastern District indictment are true.

19          All of the allegations in the District of Columbia

20  indictment are true but two, paragraph 21(a) of that

21  indictment states that I conspired with other persons to

22  murder members of a group called Los Burros [Ph.].  That

23  allegation is not true.  Paragraph 21(f) of the same

24  indictment states that I personally shot and killed Luis

25  Alfonso Ocampo Fomagay [Ph.].  This allegation is also not

1  true.  I did, however, conspire with others in the indictment

2  to lure him to a meeting at which we knew that others working

3  for the enterprise would kill him at our behest.

4           THE COURT:  Mister -- this may be overly technical

5  since some of this in implicit in what's already been said,

6  but it's not explicit.  Mr. Ramirez-Abadia, did the

7  enterprise, the North Valley Cartel have more than five

8  members?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Did the North Valley Cartel generate

11  receipts in excess of ten million dollars during any

12  particular 12-month period?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  I assume that the Government is

15  satisfied with the allocution and that the interstate commerce

16  elements are met by the references to drug importation, among

17  other things.  Is there anything else you would have me

18  inquire of the defendant?

19          MS. POKORNY:  I'll just put on the record briefly

20  that venue is established by various means including drugs and

21  money coming through our district in addition to the murder of

22  Vladimir Viegelman, which is a violation one of the Brooklyn

23  indictment actually occurred in Queens, New York.

24          THE COURT:  Do you agree with the prosecutor's

25  representation to the Court that Mr. Viegelman was killed in

1   Queens, New York?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  One thing I neglected to focus on as I

4   was listening, Ms. Pokorny, that you might be able to help me

5   with was the fact that we talked earlier about the

6   racketeering acts that carry life,  I've lost track of that

7   but I -- now that I'm saying it out loud I think the drug

8   description meets those requirements.

9           MS. POKORNY:  That's correct.  The Racketeering Act

10  I and Racketeering Act III charged cocaine distribution he

11  allocuted to 150 kilograms along with [inaudible] five

12  kilograms.

13          THE COURT:  Right.  And that also meets the 30 times

14  500 grams for purposes of the CCE -- 300 times 500 grams.

15          [Off the record.]

16          MS. POKORNY:  -- Your Honor is going to put in the

17  record that you recommend that Judge Townes accept the

18  release.

19          THE COURT:  Yeah.

20          MS. POKORNY:  So I'll just put on the record that we

21  will follow-up then also.

22          THE COURT:  Based on the information given to me I

23  find that the defendant is acting voluntarily, that he fully

24  understands his rights and the consequences of his plea, and

25  that his plea has a basis in fact.  I therefore recommend that

1   Judge Townes accept the defendant's pleas of guilty to Counts

2   I of the two indictments we've been referring to throughout

3   these proceedings.  I understand that sentencing will be

4   scheduled by Judge Townes' chambers at some point in the

5   future.

6           Is there anything further for my attention before we

7   close the record?

8           MR. NALVEN:  Judge, you've already -- Your Honor

9   already made reference to it.  Just our application that

10  default versus of the allocution English and Spanish be filed

11  in the [inaudible] Court.

12          THE COURT:  Yes, I will see to that.

13          MS. POKORNY:  Yes, thank you.

14          THE COURT:  Thank you everybody.

15          MS. POKORNY:  Thanks to the marshals.

16          MR. ZAPP:  Your Honor, if I could just put on the

17  record this is not consensually germane to the plea but my

18  client would feel much better.  I could simplify this.  My

19  client was arrested in Brazil on August 8th of 2007 for the

20  extradition purposes only and I'm holding so that the record

21  will reflect -- I'm holding the decision which simply says

22  preventative detention for extradition number 590 and it says

23  that the person -- country that wants the defendant Juan

24  Carlos Ramirez-Abadia also known as Chupeta is the United

25  States of America.

1          The defendant was in continuous custody since the

2   7th -- or since the 8th of August 2007 until he left for this

3   country so he was never outside of the custody and he left on

4   August 22nd of 2008.  And I'm also holding a Supreme Court

5   decision of the country of Brazil which states that for the

6   time that he was in continuous custody on this extradition

7   warrant he should be given credit.  That was one of the

8   conditions that Brazil asked from the Government of the United

9   States so the Court should know that the country of Brazil has

10  recommended that.

11          THE COURT:  Well, I will not deem the Government's

12  silence to be acquiescence to your point but I'm sure it will

13  be taken up and fully aired between now and sentencing.  Is

14  there anything else?

15          MR. ZAPP:  Well, I was under the impression, Your

16  Honor, that the Government knew about this and knew -- because

17  I'm only -- I'm only reciting facts.  I'm not reciting any --

18          THE COURT:  Well, it's a funny time to bring it up

19  if it's part of the agreement.

20          MR. ZAPP:  No, it's not.  It's not.  I just --

21  sometimes these things -- I'll tell you the problem.  The

22  problem is that when people try to verify this by the

23  Government it goes from State Department to State Department

24  and it comes all the way back and it sometimes is never

25  resolved.  And you have a situation where a man may be doing

1  26 and -- doing 26 years rather than 25 years and totally

2  undeservedly.

3      MS. POKORNY:  I'm -- I will acknowledge that under

4  the statute your presence is required to give him credit for

5  time spent "awaiting extradition" and the U.S. Government

6  promised the Government of Brazil that whatever amount of time

7  that is he is entitled to that.

8      THE COURT:  All right.  Thank you, everyone.  I'd

9  like counsel to stay behind just to help me with what gets

10  filed and by whom.

11     MR. NALVEN:  Thank you, Your Honor.

12     (Proceedings concluded at 5:34 p.m.)

13                    * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

1    I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4 

5

6    _____

7                              Ruth Ann Hager

8 Dated:  March 4, 2010

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25