

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:MED
F. #2009R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 31, 2022

<u>By ECF and Email</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Juan Carlos Ramirez-Abadia
                  <u>Criminal Docket Nos. 04-1064 (S-3) (BMC) & 09-772 (BMC)</u>

Dear Judge Cogan:

        The government submits this letter in connection with the sentencing of the defendant Juan Carlos Ramirez-Abadia, currently scheduled for June 9, 2022 at 12:00 p.m. The government respectfully requests that the Court, pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and Federal Rule of Criminal Procedure 11(c)(1)(C), impose the previously agreed-upon sentence of 300 months' (25 years') imprisonment, five years' supervised release and a $200 special assessment. As set forth below, the defendant provided significant and substantial assistance to the government.

    I.    <u>Background</u>

        As detailed in the Presentence Investigation Report dated March 8, 2022 ("PSR"), Ramirez-Abadia was the leader of the Ramirez-Abadia wing of the Norte Valle Cartel, a powerful and violent narcotics trafficking organization based in the Norte Valle de Cauca region of Colombia that exported more than 100,000 kilograms of cocaine worth over $1 billion into the United States between 1989 and 2007. PSR ¶¶ 19, 20, 22.

        During his time as a leader of the Norte Valle Carte, Ramirez-Abadia employed numerous individuals to manufacture, transport and export thousands of kilograms from Colombia to Mexico and ultimately to the United States. PSR ¶ 26. Ramirez-Abadia additionally employed individuals to handle the money laundering side of the Cartel's operations <u>Id.</u> In total, as charged in the operative indictments, Ramirez-Abadia is responsible for the importation of over 50,000 kilograms of cocaine into the United States and the laundering of over $1 billion in narcotics proceeds. <u>Id.</u> ¶¶ 31, 33.

Ramirez-Abadia also employed "sicarios," or hitmen, who in turn had dozens of workers under them, to carry out hundreds of murders, tortures, kidnappings, and violent debt collections at Ramirez-Abadia's behest. PSR ¶ 26. Specifically, as charged in Count One of Third Superseding Indictment to which Ramirez-Abadia has pleaded guilty in in United States v. Juan Carlos Ramirez-Abadia, Criminal Docket No. 04-1064 (S-3) (SLT), Ramirez-Abadia ordered the murder of Vladimir Biegelman. PSR ¶ 34. And, as the Court as aware, Ramirez-Abadia testified at the trial of Joaquin Archivaldo Guzman Loera that he ordered the murder of multiple individuals both within and outside of the United States to effectuate the goals of the Norte Valle Cartel.

Ramirez-Abadia was arrested in Brazil in August 2007 and extradited to the United States in August 2008. On March 1, 2010, Ramirez-Abadia pleaded guilty before the Honorable Magistrate Judge Steven M. Gold to (1) Count One of the Third Superseding Indictment in United States v. Juan Carlos Ramirez-Abadia, Criminal Docket No. 04-1064 (S-3) (SLT), charging him with operating a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848; and (2) Count One of United States v. Juan Carlos Ramirez-Abadia, Criminal Docket No. 09-772 (SLT), transferred via Rule 20 from the District of Columbia to the Eastern District of New York, charging him with racketeering, in violation of Title 18, United States Code, Section 1962(c). These guilty pleas were accepted by Order of the late Judge Sandra L. Townes on March 17, 2010. See ECF No. 37; see also PSR ¶ 1.

II. Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [U.S. Sentencing Guidelines ("Guidelines")] range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The

district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

### III. Ramirez-Abadia's Guidelines Calculation

The PSR calculates a criminal history category of I and a total offense level of 54, effectively 43, which yields an advisory Guidelines range of life imprisonment. See PSR ¶¶ 45–74, 77. The government agrees that this calculation is correct; however, because the defendant pleaded guilty pursuant to a Rule 11(c)(1)(C) cooperation agreement, his operative Guidelines range is 25 years' imprisonment. The statutory mandatory minimum term of imprisonment for the offenses of conviction is twenty years. Id. ¶ 107. However, because the government makes this motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the Court is permitted to sentence the defendant below the applicable advisory Guidelines range and statutory mandatory minimum.

### IV. Ramirez-Abadia's Cooperation

Although there is no question that Ramirez-Abadia engaged in a decades-long illicit career in the violent world of international drug trafficking, Ramirez-Abadia took steps after his arrest and extradition that amount to truly significant and substantial assistance to law enforcement.

Ramirez-Abadia began cooperating with agents while in custody in Brazil awaiting extradition to the United States. He surrendered ledgers, millions of dollars in drug proceeds, properties, weapons, and he urged other co-conspirators to surrender. While incarcerated in Brazil, Ramirez-Abadia learned of a plot to kidnap the son of Brazil's president and obtain release via extortion and disclosed this information to Brazilian authorities. As a result, the plot was unsuccessful.

Upon his arrival in the United States in August 2008, Ramirez-Abadia continued to cooperate, speaking with agents and prosecutors from the Eastern District of New York and the Department of Justice concerning the full scope of his criminal offenses, including over a hundred murders, as well as the criminal activity of numerous other individuals. Ramirez-Abadia was forthcoming with law enforcement, took responsibility for his crimes, and did not seek to minimize his conduct. Ramirez-Abadia additionally spoke candidly about topics that were personally embarrassing to him and involved his associates. Additionally, Ramirez-Abadia paid forfeiture of over $6 million dollars to the United States and provided information to the Colombian government resulting in the seizure of monies and property totaling approximately one billion dollars.

Ramirez-Abadia's cooperation was publicly disclosed in connection with his signature of three first-person extradition affidavits for high-level Mexican cartel leaders, Jesus Zambada Garcia, Hector Beltran Leyva, and Joaquin Archivaldo Guzman Loera. Thereafter, as the Court is aware, Ramirez-Abadia testified publicly at the trial of Guzman Loera, who was convicted after a three-month trial of all ten counts in the operative indictment, including conducting a continuing criminal enterprise, conspiracy to traffic cocaine, heroin and marijuana, substantive drug offenses, unlawful use of a firearm and money laundering conspiracy. See

<u>United States v. Joaquin Archivaldo Guzman Loera</u>, Criminal Docket No. 09-466 ECF No. 650 (Judgement).

       Over the course of three days, Ramirez-Abadia testified about his partnership with Guzman Loera, which began in the early 1990s.  Ramirez-Abadia testified that Guzman Loera smuggled the Norte Valle Cartel's cocaine from Colombia through Mexico into the United States in exchange for forty percent of each load as payment.  Ramirez-Abadia also provided significant detail about Guzman Loera's trafficking operations, including the methods that Guzman Loera used to smuggle cocaine into the United States.  Finally, Ramirez-Abadia's testimony provided critical insight for the jury regarding Guzman Loera's shift from trafficking primarily in marijuana to cocaine, making him one of the largest, most successful, and wealthy drug lords in the world.

       Ramirez-Abadia's detailed testimony about his partnership with Guzman Loera and his insight into Guzman Loera's operations was significant and no doubt helped secure Guzman Loera's conviction.  His first-person extradition affidavits enabled the government to extradite powerful cartel leaders to the United States in order to face justice for their crimes.  Ramirez-Abadia's highly publicized trial cooperation and public extradition affidavits against three high-ranking drug lords means that Ramirez-Abadia and his family will face the danger of retribution far into the future, and it cannot be understated what a risk these actions posed and continue to pose to Ramirez-Abadia.

       In addition to the conviction in Guzman Loera, the knowledge that Ramirez-Abadia was available as a cooperating witness for the government is believed to have resulted in multiple guilty pleas of high-level drug trafficking defendants, including Alfredo Beltran Leyva, who received a sentence of life imprisonment in <u>United States v. Alfredo Beltran Leyva</u>, Criminal Docket No. 12-184 (D.D.C.).

       Moreover, Ramirez-Abadia has been eager to assist the government in other prosecutions.  As noted, Ramirez-Abadia began cooperating with the government almost immediately upon his arrest and provided valuable information that has led to the successful disruption and prosecution of high-level narcotics trafficking and money laundering organizations.  For example, Ramirez-Abadia provided ledgers documenting monetary payments made to officials from the Autodefensas Campesinas de Colombia and FARC guerillas to continue the Norte Valle Cartel's operations.  Ramirez-Abadia has also proffered extensively with the government regarding corrupt government officials in Colombia and Mexico and has given valuable information about narcotics traffickers who are alleged to have murdered witnesses that have cooperated with the government.  These actions further underscore the risk that Ramirez-Abadia has taken to aid law enforcement since his arrest and extradition nearly fifteen years ago.

V.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose the previously agreed-upon sentence of 300 months' incarceration, five years' supervised release and a $200 special assessment.

                                            Respectfully submitted,

                                            BREON PEACE
                                            United States Attorney

By:      /s/
                                            Marietou E. Diouf
                                            Assistant U.S. Attorney
                                            (718) 254-6263

cc:      Clerk of the Court (BMC) (by ECF)
         Counsel of Record (by Email and ECF)
         U.S. Probation Officer Jaime L. Turton (by Email)